IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:96-cr-227 |
| | ) | |
| KURT SHAWN HANEIPH, | ) | CIVIL NO. 1:16-cv-780 |
| | ) | |
| Defendant-Petitioner. | ) | |

**GOVERNMENT'S RESPONSE AND MOTION TO DISMISS
DEFENDANT'S PETITION UNDER 28 U.S.C. § 2255**

The defendant has filed a petition seeking relief under 28 U.S.C. § 2255.  (ECF No. 156.)

The Court previously stayed proceedings in this matter on the government's motion.

(ECF Nos. 156, 161.)  Following the Supreme Court's decision in *Sessions v. Dimaya*,

138 S. Ct. 1204 (2018), the Court lifted the stay and ordered the government to file a response.

(ECF No. 162.)

At the defendant's sentencing hearing in November 1996, the Court determined that he

was a career offender under §§ 4B1.1 & 4B1.2 of the then-mandatory Guidelines in effect before

*United States v. Booker*, 543 U.S. 220 (2005).  In light of the Supreme Court's decision in

*Johnson v. United States*, 135 S. Ct. 2551 (2015), the defendant argues that his career-offender

enhancement is no longer valid.  Binding precedent, unaffected by *Dimaya*, forecloses this

argument.  The current petition therefore fails both in the face of numerous procedural bars and

on the merits, and the Court should dismiss it.

**Factual and Procedural Background**

On June 4, 1996, a grand jury sitting in Alexandria returned a seven-count indictment

against Kurt Shawn Haneiph and others for their involvement in a conspiracy to distribute crack cocaine in various areas of northern Virginia.  Haneiph was charged with:  conspiracy to distribute 50 grams or more of cocaine base (Count 1), distribution of 5 grams or more of cocaine base (Counts 4 & 5), distribution of cocaine base (Count 6), and distribution of heroin (Count 7).  Counts Six and Seven were subsequently dismissed on motion of the government.

On August 5, 1996, following a jury trial in this Court (Hilton, J.), Haneiph was convicted on all remaining counts.

On November 15, 1996, the Court sentenced Haneiph to a term of imprisonment of 360 months on Count One and 240 months on Counts Four and Five, to run concurrently.  At the defendant's sentencing hearing, the Court determined that he was a career offender pursuant to U.S.S.G. § 4B1.1 because his instant offense was a controlled substance offense and he had prior convictions for at least one "controlled substance offense" and one "crime of violence" as defined by the then-mandatory Guidelines.  *See* U.S.S.G. §§ 4B1.1, 4B1.2.[1]

More specifically, § 4B1.2(1) of the Guidelines in effect at the time defined a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii)   is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

---

[1] At the defendant's sentencing hearing, the Court applied the Guidelines effective November 1995, *available at* https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/1995/1995_Guidelines_Manual_Full.pdf.

The first clause in subsection (i) is commonly referred to as the "force clause," whereas the italicized clause in subsection (ii) is commonly referred to as the "residual clause." The Presentence Investigation Report ("PSR") in this case reflected (1) that the defendant's conviction constituted a controlled substance offense under § 4B1.2, (2) that the defendant had a prior "controlled substance offense" conviction for conspiracy to possess with intent to distribute cocaine, and (3) that defendant had previously committed a "crime of violence" in that he was convicted of Attempted Murder 2 in the Supreme Court of Kings County, New York. Accordingly, the defendant's mandatory Guidelines range was 360 months to life imprisonment. Without the career offender finding, the defendant's Guidelines range would have been 324 to 405 months' imprisonment.

On November 15, 1996, the defendant filed his notice of appeal. On November 18, 1997, the Fourth Circuit Court of Appeals affirmed defendant's convictions and sentence. *See United States v. Haneiph*, 129 F.3d 1261 (4th Cir. Nov. 18, 1997) (table).

On December 18, 1998, the defendant filed a motion under 28 U.S.C. § 2255 (ECF No. 101), which was subsequently denied by this Court on August 31, 1999 (ECF Nos. 108–09). Several years later, in 2006, the defendant filed with the Fourth Circuit Court of Appeals an unsuccessful application under 28 U.S.C. § 2244 to file a second or successive § 2255 motion. (ECF No. 125.) While in federal confinement in the Western District of Pennsylvania, the defendant filed a petition under 28 U.S.C. § 2241 in August 2007. The district court adopted the magistrate judge's recommendation that the petition be dismissed for lack of subject matter jurisdiction. *Hanieph v. Marberry*, No. 07-cv-231 (SJM), 2010 WL 1052956 (W.D. Pa. Mar. 22, 2010), *adopting report and recommendation*, No. 07-cv-231 (SPB), 2010 WL 1052957 (W.D. Pa. Mar. 2, 2010). The Third Circuit affirmed dismissal of the defendant's

3

§ 2241 petition on August 4, 2010.  *Hanieph v. Marberry*, 390 F. App'x 57 (3d Cir. 2010).

The defendant filed his instant motion for relief under 28 U.S.C. § 2255 on June 21, 2016.  (ECF No. 156.)  The Court stayed proceedings in this matter on the government's motion. (ECF Nos. 156, 161.)  After the Supreme Court issued its decision in *Dimaya*, the Court lifted the stay on April 24, 2018.  (ECF No. 162.)

**Argument**

The defendant asks the Court to resentence him, asserting that under *Johnson v. United States*, 135 S. Ct. 2551 (2015), he no longer qualifies as a career offender.  The Court should reject this argument for the reasons appearing below.

**I.      The Petition Is Untimely Under 28 U.S.C. § 2255(f) and Fourth Circuit Precedent**

The Fourth Circuit's recent decision in *United States v. Brown*, 868 F.3d 297 (4th Cir. 2017), confirms that the defendant's petition is untimely under 28 U.S.C. § 2255(f)(3).

Normally, a defendant may file a motion under § 2255 within one year of his conviction becoming final.  *See* 28 U.S.C. § 2255(f)(1).  The defendant's conviction became final in early 1998 after the time to file a petition for certiorari expired, so his § 2255 petition filed in June 2016 is untimely by more than 17 years.  Section 2255(f)(3), however, provides an exception allowing defendants to file a § 2255 motion within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  The timeliness of the current petition therefore depends on the proposition that the Supreme Court has announced a "newly recognized" right regarding the defendant's career-offender enhancement.  Because this assertion is incorrect, the exception created by § 2255(f)(3) is unavailable and the defendant's petition is untimely.

For a defendant to satisfy § 2255(f)(3), the Supreme Court itself must be the judicial body to establish the right in question. *Dodd v. United States*, 545 U.S. 353, 357 (2005). Thus, § 2255(f)(3) "does not authorize [a lower court] to read between the lines of a prior opinion [by the Supreme Court] to discern whether that opinion, by implication, made a new rule retroactively applicable on collateral review." *United States v. Mathur*, 685 F.3d 396, 401 (4th Cir. 2012). In addition, § 2255(f)(3) provides that when the Supreme Court "decides a case recognizing a new right, a federal prisoner seeking to assert that right will have one year from [that] decision within which to file his § 2255 motion." *Dodd*, 545 U.S. at 358–59.

These standards create an orderly, rational process. Courts reopen the statute of limitations for specific rights that the Supreme Court has newly recognized and do so for one year, but the Supreme Court must be the one to recognize the right at issue. This system also provides both a restriction and a benefit for defendants. On the one hand, § 2255(f)(3) is a restriction because defendants with final convictions must wait for new, specific rulings from the Supreme Court. On the other hand, in requiring that the Supreme Court recognize specific rights, § 2255(f)(3) ensures that defendants need not be clairvoyant about how the law might develop. This procedure also promotes efficiency in the legal system. Rather than parsing new Supreme Court opinions for other possible applications, district courts may simply apply controlling precedents and wait to see if the Supreme Court later extends their reach. In this way, Congress sought to ensure nationwide uniformity in the treatment of long-final convictions.

To determine whether the Supreme Court has issued a "new" constitutional ruling satisfying § 2255(f)(3), courts apply the framework of *Teague v. Lane*, 489 U.S. 288 (1989). Under the *Teague* framework, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final," and "a holding is not so

5

dictated . . . unless it would have been apparent to all reasonable jurists." *Chaidez v. United States*, 568 U.S. 342, 347 (2013) (quoting *Teague*, 489 U.S. at 301; *Lambrix v. Singletary*, 520 U.S. 518, 527–28 (1997)) (emphasis in original).  Or, as the Fourth Circuit put it in *Brown*, "if the existence of a right remains an open question as a matter of Supreme Court precedent, then the Supreme Court has not 'recognized' that right."  868 F.3d at 301.

Indeed, *Brown* forecloses the defendant's argument here—*i.e.*, that the residual clause of the pre-*Booker*, mandatory Sentencing Guidelines is void for vagueness under *Johnson*.  The Fourth Circuit concluded in *Brown* that § 2255(f)(3) barred it from reaching the merits of such a claim.  It reasoned that "a Supreme Court case has 'recognized' an asserted right within the meaning of § 2255(f)(3) if it has formally acknowledged that right in a definite way."  *Id.* at 301 (citing Merriam-Webster Tenth Collegiate Dictionary 976 (1996)).  Thus, for purposes of collateral review, the "right" recognized by *Johnson* was narrow; that opinion merely invalidated the residual clause of the Armed Career Criminal Act ("the ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), and did not "recognize a broad right invalidating all residual clauses as void for vagueness simply because they exhibit wording similar to ACCA's residual clause." *Id.* at 302.  This was fatal to Brown's claim.  He argued that "because the challenged residual clause looks like ACCA and operates like ACCA, it is void for vagueness like ACCA." *Id.* at 303.  The Fourth Circuit was unwilling to extend *Johnson* in this fashion, determining that, on collateral review, it lacked the power "to create a right that the Supreme Court has yet to recognize."  *Id.* at 304.

*Brown* also addressed *Beckles v. United States*, 137 S. Ct. 886 (2017), where the Supreme Court held "that the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause and that § 4B1.2(a)'s residual clause is not void for vagueness."

6

*Id.* at 895.  The petitioner in *Brown* argued that, by limiting its holding in *Beckles* to the *advisory* Guidelines, the Supreme Court had "le[ft] open the question of whether defendants could challenge sentences imposed under the *mandatory* Sentencing Guidelines as void for vagueness." 868 F.3d at 302 (emphasis added).  The Fourth Circuit was unpersuaded.  In its view, "*Beckles* confirm[ed] that the Supreme Court has yet to recognize a broad right invalidating all residual clauses as void for vagueness simply because they exhibit wording similar to ACCA's residual clause."  *Id.*  Because the defendant's petition failed to identify any right "newly recognized" by the Supreme Court, it was untimely and dismissal was appropriate.  *Id.* at 304.[2]

     *Brown* forecloses relief in this context.  Unless the Supreme Court *itself* rules on the issue of the post-*Johnson* status of the mandatory Guidelines, the procedural bar of § 2255(f)(3) is insuperable.  *See, e.g.*, *Dedmon v. United States*, --- F. Supp. 3d ---, 2018 WL 1406634, at *2 (E.D. Va. 2018) (concluding that *Brown* was "dispositive" as to the untimeliness of a habeas petition challenging a sentence under the mandatory Guidelines); *United States v. Autrey*, 263 F. Supp. 3d 582, 588 (E.D. Va. 2017) (concluding "that *Johnson* did not establish a new 'right' applicable to defendant or the mandatory Guidelines").

     The Supreme Court's recent decision in *Dimaya* does not alter this analysis.  *Dimaya* held that the definition of a "crime of violence" in 18 U.S.C. § 16(b) is unconstitutionally vague

---

[2] The Fourth Circuit noted that, had the issue in *Brown* arisen on direct appeal, the court "might have had the inferential license necessary to credit" the defendant's argument.  868 F.3d at 304.  Even so, it had no choice but to "consider [that] argument through the narrow lens that § 2255(f) affords this court on collateral review."  *Id.  See also United States v. Greer*, 881 F.3d 1241, 1248 (10th Cir. 2018) (stating that a collateral challenge to the mandatory Guidelines is not "a true *Johnson* claim" because it requires courts "to apply the reasoning of *Johnson* in a different context not considered by the [Supreme] Court"); *Raybon v. United States*, 867 F.3d 625, 630–31 (6th Cir. 2017) (rejecting as untimely a collateral claim that a pre-*Booker*, mandatory Guidelines sentence was invalid after *Johnson*).

as incorporated into the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(43)(F).
138 S. Ct. at 1212, 1223.  *Dimaya* did not address the status of the pre-*Booker* mandatory
Guidelines at all, meaning that the defendant cannot rely on it to overcome the procedural bar of
§ 2255(f)(3).  Doing so would break new ground, which this Court may not do on collateral
review.  Instead, consistent with the Fourth Circuit's decision in *Brown*, the petition is untimely
and should be dismissed.

## II.   The Defendant Cannot Overcome the Restrictions on Second or Successive Petitions

The defendant's petition—his second post-conviction filing under § 2255—is successive
and hence must satisfy the stringent restrictions in 28 U.S.C. § 2255(h)(2).  Section 2255(h)(2) is
satisfied "only when the Supreme Court declares the collateral availability of the rule in
question."  *United States v. Thomas*, 627 F.3d 534, 536 n.1 (4th Cir. 2010) (quoting *In re Vial*,
115 F.3d 1192, 1197 (4th Cir. 1997) (en banc); citing *Tyler v. Cain*, 533 U.S. 656, 662 (2001)).
Specifically, § 2255(h)(2) requires a defendant to rely on "a new rule of constitutional law, made
retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."
28 U.S.C. § 2255(h)(2).   Because the Supreme Court has neither extended *Johnson* to the
mandatory Guidelines nor made such an extension retroactive, the defendant cannot satisfy
§ 2255(h)(2), and his successive petition is therefore barred.

Although the Fourth Circuit authorized the defendant to file a successive petition, that
authorization is not determinative now.  This Court must determine *de novo* whether the
defendant's petition satisfies § 2255(h)(2).  *See, e.g., United States v. Winestock*, 340 F.3d 200,
205 (4th Cir. 2003) ("When the application is thereafter submitted to the district court, that court
must examine each claim and dismiss those that are barred under § 2244(b) or § [2255(h)].");
*United States v. Friend*, 2015 WL 2206873, at *2 (E.D. Va. May 11, 2015) ("This Court must

examine [the defendant's] claim '*de novo*' to assure that is satisfies the requirements of § 2255(h)(2)." (citing cases)).[3]

It is true that the Fourth Circuit authorized the defendant to file the petition in this case. (ECF No. 157.)  In authorizing the defendant to file a successive petition, however, the Fourth Circuit merely took "a cursory glance at the merits" of whether a defendant was entitled to relief, satisfying § 2255(h)(2).  *In re Hubbard*, 825 F.3d 225, 231 (4th Cir. 2016) (quoting *In re Williams*, 330 F.3d 277, 282 (4th Cir. 2003)).  The ultimate determination of whether a § 2255 motion meets the § 2255(h)(2) requirement "is for the district court to determine," including an evaluation of the government's defenses.  *Id.*  Here, because the Supreme Court has not extended *Johnson* to the mandatory Guidelines, nor declared the collateral availability of such an extension, the defendant's successive § 2255 motion must be denied.  *See, e.g.*, *United States v. Oliver*, No. 3:99-cr-321 (MHL), 2018 WL 1902686, at *3 (E.D. Va. Apr. 20, 2018) (in the context of a mandatory Guidelines challenge, concluding that "[p]etitioner's attempt to utilize *Johnson* as a means around the procedural roadblock of § 2255(h)(2) fails").

## III.   The Defendant's *Johnson* Challenge to the Mandatory Guidelines Is Improper Under *Teague*

Any extension of *Johnson* to mandatory Guidelines would not be retroactive under *Teague v. Lane*, 489 U.S. 288 (1989).  When the Supreme Court announces a new procedural

---

[3]  Other courts of appeals follow the same approach in requiring district courts to serve as independent gatekeepers of the § 2255(h) standard for successive petitions.  *See, e.g.*, *Menteer v. United States*, 806 F.3d 1156, 1156 (8th Cir. 2015) (stating that a district court "must not defer to this court's preliminary determination in granting authorization" (internal quotation marks omitted)); *Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001) ("[T]he . . . panel's grant of permission to [defendant] to file a second § 2255 motion did not preclude the [district court] from conducting its own threshold inquiry; in fact, the [district court] was *obligated* to do so." (emphasis added)); *United States v. Villa-Gonzales*, 208 F.3d 1160, 1165 (9th Cir. 2000); *Bennett v. United States*, 119 F.3d 468, 470 (7th Cir. 1997).

rule, that rule "applie[s] retroactively to all cases, state or federal, pending on direct review or not yet final."  *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).  But prisoners generally cannot invoke new procedural rules to obtain collateral relief from final convictions.  Drawing on an approach earlier articulated by Justice Harlan, the plurality opinion in *Teague* concluded that "new constitutional rules of criminal procedure" generally "will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310; *see Mackey v. United States*, 401 U.S. 667, 675–702 (1971) (Harlan, J., concurring in the judgments in part and dissenting in part).  The full Supreme Court has since adopted that approach.  *See Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (assuming that "the *Teague* framework applies in a federal collateral challenge to a federal conviction").

As the Supreme Court explained in *Welch*, two categories of new legal rules are not subject to *Teague*'s retroactivity bar.  136 S. Ct. at 1264.  "First, '[n]ew substantive rules generally apply retroactively.'"  *Id.* (emphasis and citation omitted; brackets in original).  The *Teague* bar is concerned with rules of procedure, not the substantive reach of criminal statutes. "Second, new watershed rules of criminal procedure, which are procedural rules implicating the fundamental fairness and accuracy of the criminal proceeding, will also have retroactive effect." *Id.* (citation and internal quotation marks omitted).  The only example of a watershed rule that the Supreme Court has recognized is the right-to-counsel rule of *Gideon v. Wainwright*, 372 U.S. 335 (1963).  *See Whorton v. Bockting*, 549 U.S. 406, 418-419 (2007).

The *Teague* framework recognizes that "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system."  489 U.S. at 309 (plurality opinion).  Collateral review has never been a "substitute for direct review."  *Id.* at 306 (internal

quotation marks omitted).  Rather, collateral review's principal purposes are to deter state and federal courts from violating then-governing procedural law, *id.*, and to provide a remedy when a defendant is imprisoned for conduct that is not criminal, *Bousley v. United States*, 523 U.S. 614, 620-621 (1998), or is subject to a sentencing range greater than what the law authorizes, *Welch*, 136 S. Ct. at 1265.  Where those purposes are not implicated, the overriding "interests of comity and finality" generally preclude relief.  *Teague*, 489 U.S. at 308 (plurality opinion).  As Justice Harlan explained, "[a] rule of law that fails to take account of . . . finality interests would do more than subvert the criminal process itself "; "[i]t would also seriously distort the very limited resources that society has allocated to the criminal process."  *Mackey*, 401 U.S. at 691 (concurring in the judgments in part and dissenting in part).

The rule that defendant seeks to establish—that the mandatory Guidelines are subject to vagueness challenge and the residual clause appearing there is vague—is a "new" constitutional rule, because the invalidity of the Guidelines' residual clause and the associated commentary was not "dictated by precedent existing at the time [his] conviction became final."  *Chaidez*, 133 S. Ct. at 1107 (citation omitted).  Importantly for the retroactivity analysis, that rule is "new" not only because *Johnson* was decided in 2015, but also because to obtain relief defendant must establish an additional novel proposition:  that the vagueness doctrine applies to mandatory Guidelines—even though the Supreme Court has now held in *Beckles* that the vagueness doctrine does not apply to advisory Guidelines.  The defendant's asserted rule would therefore be "new" even if his conviction had become final after *Johnson*.

The defendant is thus foreclosed from obtaining relief unless his asserted rule falls within one of the two categories exempt from the *Teague* bar.  He cannot contend that his asserted rule would be a "watershed" rule of criminal procedure.  *Welch*, 136 S. Ct. at 1264 (stating that the

11

*Johnson* rule was not watershed).  Accordingly, defendant's rule would apply retroactively only if it qualifies as "substantive" under *Teague*.

The Supreme Court "has determined whether a new rule is substantive or procedural by considering the function of the rule"—that is, the actual effect of the rule when applied in criminal cases.  *Welch*, 136 S. Ct. at 1265.  "A rule is substantive rather than procedural," the Court explained in *Welch*, "if it alters the range of conduct or the class of persons that the law punishes."  *Id.* at 1264–65 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)).  Thus, substantive rules include constitutional rules forbidding criminal punishment for certain primary conduct, *e.g.*, *Loving v. Virginia*, 388 U.S. 1 (1967); constitutional rules prohibiting the imposition of certain forms of punishment, such as the death penalty or mandatory life imprisonment without parole, on particular classes of offenders, *e.g.*, *Montgomery v. Louisiana*, 136 S. Ct. 718, 734 (2016); statutory-interpretation decisions holding that a criminal offense does not reach certain primary conduct, *Bousley*, 523 U.S. at 620; and decisions voiding for vagueness a statutory provision defining a criminal offense or punishment, *Welch*, 136 S. Ct. at 1265.

Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a more severe range of punishment than the law authorizes.  *Summerlin*, 542 U.S. at 352 (quoting *Bousley*, 523 U.S. at 620).  In those circumstances, the finality interests underlying *Teague* must give way because "[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose."  *Montgomery*, 136 S. Ct. at 732 (quoting *Mackey*, 401 U.S. at 693 (Harlan, J., concurring in the judgments in part and dissenting in part)).

In contrast, procedural rules regulate the "manner of determining" either guilt or punishment, but do not shield a defendant from criminal liability or from exposure to a particular

sentencing range.  *Welch*, 136 S. Ct. at 1265 (emphasis omitted) (quoting *Summerlin*, 542 U.S. at 353).  Examples of procedural rules are rules that "'allocate decisionmaking authority' between judge and jury," *id.* (quoting *Summerlin*, 542 U.S. at 353), rules that "regulate the evidence that the court could consider in making its decision," *id.* (citing *Whorton*, 549 U.S. at 413–14, 417), and rules that govern the sort of considerations that a sentencing judge or jury may take into account, *e.g.*, *Lambrix v. Singletary*, 520 U.S. 518, 539–540 (1997).  Such rules do not alter the authorized range of possible outcomes.  Although in any given case procedural rules may have a significant effect on the outcome, a violation of those rules does not mean that any prisoner is serving a sentence that is not legally authorized or change the statutory range.  For that reason, the advent of new procedural rules does not warrant upsetting final convictions in light of the overriding societal interest in the finality of criminal judgments.

Accordingly, the retroactivity question in this case depends on the "function" of the rule that the defendant seeks—that is, whether, in practical operation, the rule would "alter[] the range of conduct or the class of persons that the law punishes" or instead regulate only the "manner of determining" an appropriate sentence.  *Welch*, 136 S. Ct. at 1264-1265 (citations and emphasis omitted).

Defendant's proposed extension of *Johnson*, as limited by *Beckles*, would have a procedural function.  A Guidelines range does not impose substantive limits on the range of legally authorized sentences.  The rule would not "alte[r] the range of conduct or the class of persons that the law punishes."  *Welch*, 136 S. Ct. at 1267 (quoting *Summerlin*, 542 U.S. at 353) (brackets in original).  Even if he prevails on his claim, the defendant will still be subject to the same statutory range of punishment, and the district court would be authorized to impose a sentence within that range on remand.

13

Just as a rule that "regulate[s] the evidence that [a] court could consider in making [a] decision" qualifies as procedural, *Welch*, 136 S. Ct. at 1265, a rule that alters the considerations that a court must take into account in deciding an appropriate sentence is procedural because it governs the manner of arriving at a decision, not the substantive bounds of a permissible sentence.[4]

Under the ACCA, when a court relied on the residual clause to find that the defendant had the necessary three prior convictions, the defendant's sentence was elevated from a maximum of ten years to a minimum of fifteen years. *Compare* 18 U.S.C. § 924(a)(2), *with* 18 U.S.C. § 924(e)(1). The constitutional rule announced in *Johnson* renders the 15-year mandatory minimum sentence illegal, and that change is substantive: it alters the permissible ranges of sentences. *See, e.g.*, *Welch*, 136 S. Ct. at 1265 ("By striking down the residual clause as void for vagueness, Johnson changed the substantive reach of [ACCA], altering 'the range of conduct or the class of person that the [Act] punishes.'"). Misapplications of the Guidelines, by

---

[4] The Fourth Circuit, in an order authorizing a successive petition under § 2255, concluded that "the rule in *Johnson* is substantive with respect to its application to the Sentencing Guidelines and therefore applies retroactively." *In re Hubbard*, 825 F.3d 225, 230 (4th Cir. 2016). As the Fourth Circuit stated in *Brown*, however, *Hubbard* "*assumed*, prior to the Supreme Court's resolution of *Beckles*, that disagreement among the federal courts of appeals on *Johnson*'s application to other residual clauses was "likely . . . enough to establish that [the petitioner] has made 'a sufficient showing of possible merit to warrant a fuller exploration by the district court . . . .'" *Brown*, 868 F.3d at 303–04 (quoting *Hubbard*, 825 F.3d at 232) (emphasis added). As *Brown* subsequently held, however, § 2255(f) bars federal courts from addressing the merits of *Johnson*'s applicability to the mandatory Guidelines on collateral review. *Id.* at 304.

*Hubbard* also does not take into account the differences that *Beckles* identified between guidelines and statutes. The defendant's argument as the mandatory Guidelines is undercut by the uniform precedent holding that *Booker*—requiring that the Sentencing Guidelines be treated as advisory—qualified as a procedural rather than a substantive rule. *See, e.g.*, *United States v. Morris*, 429 F.3d 65, 69 n.6 (4th Cir. 2005). If *Booker* did not "alter[] the range of conduct or the class of persons that the law punishes," *id.*, it is hard to see how the rule defendant seeks to create here would have done so.

contrast, do not have the same consequences.  A rule invalidating § 4B1.2's residual clause would establish that the defendant's Guidelines range was incorrectly calculated, but it would not disturb the statutory boundaries for sentencing set by Congress for the crime.  The Guidelines do not trigger a statutory mandatory minimum sentence that would not otherwise apply and do not elevate the statutory maximum, as is true under ACCA.  *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress").  Indeed, within-Guidelines sentences must always be within the limits set by Congress; as a result, a Guidelines sentence imposed under an incorrect range may be erroneous, but it is not illegal or unlawful as in a case involving prejudicial *Johnson* error under ACCA.  *See Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) (explaining that "Sun Bear's 360-month [guidelines] sentence," imposed on the basis of an error in classifying him as a mandatory offender, "is not unlawful" because "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority").

This conclusion is not altered by the fact that the Guidelines were mandatory at the time of defendant's sentencing.  Before *Booker*, sentencing courts had the authority to "depart" from the Guidelines range in appropriate cases.  *See* U.S.S.G. § 5K2.0, p.s.; *see also Koon v. United States*, 518 U.S. 81, 92 (1996); *Williams v. United States*, 503 U.S. 193, 205 (1992) ("The selection of the appropriate sentence from within the guideline range, as well as the decision to depart from the range in certain circumstances, are decisions that are left solely to the sentencing court.").  Even under the mandatory Guidelines, the Court still had the discretion—albeit more closely reviewed—to depart from the Guidelines range so long as it remained within the lawful range of sentencing outcomes.

15

After *Booker*, of course, sentencing courts have broader authority to "vary" from the now-advisory Guidelines range, including, in particular, the Guideline range after the career offender enhancement is applied.  *See, e.g.*, *Spencer v. United States*, 773 F.3d 1132, 1142 (11th Cir. 2014) (en banc) (stating that "sentencing courts depart or vary from the guideline range more often when they sentence career offenders").  Whether the Guidelines are mandatory or not, the presence of judicial authority to impose lesser sentences than called for by the Guidelines illustrates that an erroneous career-offender designation is a procedural step in a multi-step process that results in a court's selection of a sentence, not a substantive rule that expands or contracts the statutory range of outcomes.  Accordingly, *Johnson*'s application to the Guidelines constitutes a procedural rule, not a substantive decision entitled to retroactive application in Guidelines cases on collateral review.

This conclusion is supported by *Booker* itself, which expanded sentencing courts' discretion by excising portions of the Sentencing Reform Act that made the Guidelines mandatory.  *Booker*, 543 U.S. at 245–268.  So did *Pepper v. United States*, 562 U.S. 476 (2011), by excising 18 U.S.C. § 3742(g)(2).  562 U.S. at 493–98.  Yet courts have held that neither decision is retroactively applicable on collateral review.  *See, e.g.*, *Duncan v. United States*, 552 F.3d 442, 445–47 (6th Cir. 2009) (*Booker*'s remedial holding); *Blount v. United States*, No. 98-cr-412 (MTA), 2012 WL 2594109, at *3, 4 & n.9–10 (E.D. Pa. Jul 5, 2012) (*Pepper*).

In short, the defendant's challenge to his mandatory-guidelines sentence similarly depends on a new procedural rule and is thus barred under *Teague*.

## IV.    The Defendant Procedurally Defaulted His Vagueness Challenge

Because the defendant did not raise a vagueness challenge at sentencing or on direct appeal, he procedurally defaulted a vagueness challenge to the mandatory Guidelines.  *Bousley*,

523 U.S. at 621–22; *United States v. Fugit*, 703 F.3d 248, 253–54 (4th Cir. 2012). "A procedural default . . . may be excused in two circumstances:  where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice resulting therefrom." *Fugit*, 703 F.3d at 253 (citing *Bousley*, 523 U.S. at 621).

The defendant cannot establish actual innocence in challenging a mandatory Guidelines sentence.  *United States v. Pettiford*, 612 F.3d 270, 282 (4th Cir. 2010); *see also United States v. Foote*, 784 F.3d 931, 941 (4th Cir. 2015); *United States v. Jones*, 758 F.3d 579, 583–84 (4th Cir. 2014).  *See also Gilbert v. United States*, 640 F.3d 1293, 1306–07 (11th Cir. 2011) (en banc) (rejecting that the top of a mandatory Guidelines range "is the maximum statutory sentence"), *overruled on other grounds by McCarthan v. Director*, 851 F.3d 1076, 1096–97 (11th Cir.  2017) (en banc).

Nor can defendant establish cause for his default.  "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).

Just as the Fourth Circuit held that defendants were barred by procedural default from challenging Guideline sentences that were mandatory in violation of *Booker*, so too any Guidelines vagueness challenge that turns on the mandatory nature of the Guidelines is barred by procedural default too.  *United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009) (defendant who pleaded guilty with appellate waiver procedurally defaulted *Booker* claim, even though defendant tried to raise issue on direct appeal but was barred by the waiver that he entered into agreeing to surrender *Booker* claim); *cf. United States v. Johnson*, 410 F.3d 137, 151–53 (4th Cir. 2005) (appellate waiver covered *Booker* claim).

17

**V.     The Mandatory Guidelines Are Not Subject to a Vagueness Challenge**

    **A.     *Beckles* Undermines Any Vagueness Challenge in This Context**

Even if the Court were to reach the merits of the defendant's petition, the mandatory Guidelines are not subject to vagueness challenge. *See, e.g.*, *In re Griffin*, 823 F.3d 1350, 1354–55 (11th Cir. 2016). In evaluating the Guidelines when they were mandatory, the Supreme Court explained that even then, they "do not bind or regulate the primary conduct of the public or vest in the Judicial Branch the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta*, 488 U.S. at 398. Significantly, the Supreme Court reiterated these same points in *Beckles* in analyzing advisory guidelines, while citing *Mistretta*. *See Beckles*, 137 S. Ct. at 895. Even under mandatory Guidelines, the top of a Guidelines range was never the legal equivalent of a legislatively set statutory maximum. *United States v. Rodriquez*, 553 U.S. 377, 390 (2008). Similarly, a "district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *Koon v. United States*, 518 U.S. 81, 98 (1996); *Mistretta*, 488 U.S. at 367 (although the Sentencing Reform Act of 1984 makes the guidelines binding on sentencing courts, "it preserves for the judge the discretion to depart from the guideline applicable to a particular case.").

Like advisory Guidelines, mandatory Guidelines "do not implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement." *Beckles*, 137 S. Ct. at 894. First, as to notice, "even if a person behaves so as to avoid an enhanced sentence under the career-offender guideline, the sentencing court retains discretion to impose the enhanced sentence." *Id.* For example, before *Booker*, the Fourth Circuit recognized the concept of a de facto career offender. *See, e.g.*, *United States v. Cash*, 983 F.2d 558, 562

(4th Cir. 1992) (authorizing departure to de facto career-offender status where predicate sentence was disqualified as constitutionally infirm). The availability of such departures would be particularly important if the residual clause were deemed invalid. As the Eleventh Circuit has explained, "whether the Guidelines are mandatory or advisory, the district court, even without the invalidated residual clause, could still impose a sentence within the same statutory penalty range and indeed the same sentence as before. In fact, in former mandatory guidelines cases, the resentencing would now be under an even more discretionary advisory system that would permit the district court to impose the same sentence." *In re Griffin*, 823 F.3d at 1355.

Similarly, the second concern of vagueness doctrine, arbitrary enforcement, does not differ whether mandatory or advisory guidelines are considered, for the "Guidelines . . . do not regulate the public by prohibiting any conduct or by 'establishing minimum and maximum penalties for [any] crime.'" *Beckles*, 137 S. Ct. at 895 (quoting *Mistretta*, 488 U.S. at 396). In both mandatory and advisory Guidelines cases, the Guidelines guide judges, not the public, just as the factors in § 3553(a) do. *Beckles*'s reasoning undercuts any distinction between the advisory and mandatory Guidelines.

Moreover, both mandatory and advisory Guidelines share a basic structural feature that simultaneously diminishes the concern with arbitrary enforcement and highlights the way in which the Guidelines focus on judges. Specifically, through 18 U.S.C. § 3582(c)(2), the Sentencing Commission may promulgate retroactive amendments that rectify weaknesses that the Commission identifies in the Guidelines, and the amendment process allows courts to help refine the Guidelines and eliminate uncertainty, without premature constitutional attacks on vagueness grounds. The amendment process provides a far more measured, nuanced means than constitutional vagueness doctrine for addressing problems with Guideline applications, and

again, relief under even a retroactive amendment remains discretionary—"even when the current

sentence is above the amended guidelines range."  *United States v. Stewart*, 595 F.3d 197, 200

(4th Cir. 2010).

The Commission chose to eliminate the residual clause in Amendment 798 but retained a

lengthy list of enumerated offenses.  Amendment 798 is not retroactive, however, because it is

not listed in U.S.S.G. § 1B1.10(d).  When the Commission recently studied recidivism by

defendants classified as career offenders and then later released from prison, the Commission

considered defendants sentenced before *Booker* and before the sea change in classifying crimes

of violence.  The Commission found for that group a markedly higher rate of recidivism.

According to a Commission report, 47.6% of those subject to the career-offender guideline or the

armed-career-criminal guideline (Section 4B4.4) released in 2005 were later convicted of another

offense, compared to 31.7% of all federal inmates.  U.S. Sent. Comm'n, *Recidivism Among*

*Federal Offenders: A Comprehensive Overview* (Mar. 2016).[5]  And almost 70% of career

offenders or armed career criminals were rearrested.  *Id.*  As the Commission's report summed

up, those two Guidelines "serve as good predictors of future recidivism."  *Id.* at 19.

The Supreme Court summed up its ruling in *Beckles* in terms that apply equally to

advisory and mandatory guidelines:  "[I]t is far from obvious that the residual clause implicates

the twin concerns of vagueness any more than the statutory command that sentencing courts

impose a sentence tailored, for example, 'to promote respect for the law.' § 3553(a)(2)(A).  And

neither the Guidelines nor the other § 3553(a) factors implicate those concerns more than the

absence of any guidance at all, which the Government concedes is constitutional."  137 S. Ct.

---

[5] *Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

at 896.  Accordingly, the defendant's challenge the mandatory Guidelines is unavailing.

### B.      The Mandatory Guidelines Are Not Vague As-Applied to This Defendant

Outside of the First Amendment context, a person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010).   The Supreme Court has long held that there are "statutes that by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain."  *Smith v. Goguen*, 415 U.S. 566, 577–78 (1974).   In those instances, the general rule is that a vagueness challenge is not available to one who violates the "hard core" of the statute.  *Id*.  Facial vagueness challenges should therefore be reserved for statutes that "simply ha[ve] no core," "in the sense that no standard of conduct is specified at all."  *Id.* (citation and quotation marks omitted).

In fairness, *Johnson* indicated that a law need not be vague in all its applications to be unconstitutional.  *See* 135 S. Ct. at 2560–61.  *Dimaya* also declined to delineate the boundaries between as-applied vagueness and facial vagueness.  *See* 138 S. Ct. at 1214 n.3.  Instead, *Dimaya* simply reiterated that "*Johnson* found the residual clause's vagueness to reside in just 'two' of its features:  the ordinary-case requirement and a fuzzy risk standard."  *Id.* at 1221 (citing *Johnson*, 135 S. Ct. at 2557–58.)  At the same time, however, neither *Johnson* nor *Dimaya* purported to overrule the Supreme Court's numerous cases requiring a court to analyze a vagueness challenge outside of the First Amendment context on the facts of the particular case before it.  *See, e.g.*, *Chapman v. United States*, 500 U.S. 453, 467 (1991); *United States v. Powell*, 423 U.S. 87, 92 (1975); *United States v. Mazurie*, 419 U.S. 544, 550 (1975).  Moreover, for the reasons appearing above, the due process concerns animating vagueness doctrine have less import in

relation to the Guidelines than they do with respect to substantive criminal statutes.

Against this backdrop, the residual clause of the Mandatory Guidelines is clearly *not* a provision that "simply has no core."  The defendant's crime of violence was Attempted Murder in the Second Degree—conduct which clearly falls within the "core" of the residual clause and "involves conduct that presents a serious potential risk of physical injury to another."  Thus, the defendant's vagueness challenge must fail.

## VI.    The Defendant's Petition Fails on the Merits Because His Predicate Offense Is a Crime of Violence Under the Force Clause

Even assuming, *contra Brown*, that the residual clause of the mandatory Guidelines is open to challenge on collateral review, the defendant's claims would still fail.  Because the defendant's predicate offense is a crime of violence under the force clause, he is not entitled to relief.[6]

Under U.S.S.G. § 4B1.2(1)(i), an offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another."  In this context, "force" means "violent force—that is, force capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010).  The defendant's New York offense of attempted murder in the second degree categorically has such force as one of its elements.  *See, e.g.*, *United States v. Carrasco-Ortiz*, 646 F. App'x 655, 657 (10th Cir. 2016),

---

[6] Because the government contends that the mandatory Guidelines are not subject to a vagueness challenge, the defendant's career-offender enhancement remains valid under the residual clause.  Authority supports the proposition that the defendant's offense of attempted second-degree murder satisfies this clause, notwithstanding *Johnson* and *Dimaya* and their effect on other statutory provisions.  *See, e.g.*, *United States v. Edmonds*, 149 F.3d 1171 (4th Cir. 1998) (table decision) (stating that "[b]oth [New York] attempted murder and robbery constitute crimes of violence" under the Guidelines).  The government argues that the defendant's offense satisfies the force clause as an alternative basis for denying relief.

*cert. denied*, 138 S. Ct. 1272 (2018) (concluding that "any argument that the district court committed plain error in classifying the attempted [New York] second degree murder conviction as a crime of violence would be wholly frivolous"); *United States v. Bennett*, 604 F. App'x 11, 16 (2d Cir. 2015) (noting that N.Y. Penal Law § 125.25 identifies multiple branches of murder in the second degree, "each of which requires defendant to cause [the] death of another" such that the offense satisfies the force clause under the ACCA).[7]

Here, the defendant argues that one can commit second-degree murder in New York without necessarily using violent force—for example, by poisoning one's victim. (*See* ECF No. 156 at 16–17.) Recent cases make plain that this argument is not compelling. The Fourth Circuit, for example, has concluded that one cannot commit federal murder "without a use of physical force capable of causing physical pain or injury to another." *In re Irby*, 858 F.3d 231, 238 (4th Cir. 2017). Indeed, *Irby* rejected the argument that murder is not categorically a crime of violence because it can occur "without applying direct force." *Id.* at 236 (citing *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014)). As *Irby* put it, "[i]t is hard to imagine conduct that can cause another to die that does not involve physical force against the body of the person killed." *Id.* (quoting *United States v. Checora*, 155 F. Supp. 3d 1192, 1197 (D. Utah 2015)).

The defendant relies on an earlier case, *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), to argue that committing an offense by way of indirect force, such as poisoning, fails to qualify as a crime of violence. (ECF No. 156 at 16.) The Supreme Court's decision in *Castleman* has generally foreclosed these arguments. *See, e.g.*, *United States v. Burns-Johnson*,

---

[7] Under application note 1 to U.S.S.G. § 4B1.2, attempt offenses qualify as crimes of violence just as much as substantive offenses do. The defendant's prior conviction for attempted second-degree murder therefore qualifies as a crime of violence because second-degree murder is itself a crime of violence.

864 F.3d 313, 318 (4th Cir. 2017) ("*Castleman* abrogates our statement in *Torres-Miguel* that the use of poison would not constitute the use of force . . . ."); *United States v. Reid*, 861 F.3d 523, 529 (4th Cir. 2017) ("While the holding of *Torres-Miguel* may still stand following the Supreme Court's decision in *Castleman*, its reasoning can no longer support an argument that the phrase 'use of physical force' excludes indirect applications.").

Accordingly, even if the Court were to decline to apply the residual clause, the defendant remains a career offender because he committed a crime of violence within the meaning of the force clause. His petition therefore fails on the merits independent of any procedural bars preventing relief.

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's petition under 28 U.S.C. § 2255.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney


By: _____/s/_____

W. Neil Hammerstrom, Jr.
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
Email:   neil.hammerstrom@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on May 29, 2018, I electronically filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to all counsel of record, including:

Geremy C. Kamens, Esq.
Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
Geremy_Kames@fd.org
*attorney for Kurt Shawn Haneiph*

By: _____/s/_____
W. Neil Hammerstrom, Jr.
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
E-mail:   neil.hammerstrom@usdoj.gov